UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TIFFANY M. LACKNER

        Plaintiff,

      v.                            **REPORT AND RECOMMENDATION**
                                           **09-CV-00895 (NAM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.Introduction

In June 2006, Plaintiff Tiffany M. Lackner filed an application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social

Security Act ("the Act").  Plaintiff alleges she has been unable to work since December

3, 2005, due to various impairments including bilateral knee impairments, a back

impairment, fibromyalgia, migraines, obesity, and vaginal tearing. The Commissioner of

Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through her attorney, Mr. Peter Margolius, commenced this action on

August 5, 2009, by filing a Complaint in the United States District Court for the Northern

District of New York. (Docket No. 1). Plaintiff seeks judicial review of the

Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 18, 2011, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II.Background

The relevant procedural history may be summarized as follows: Plaintiff initially

applied for SSI and DIB on June 22, 2006, alleging disability beginning on December 3, 2005 (R. at 38-40, 42, 13).[1] Plaintiff alleged disability due to various impairments including bilateral knee impairments, a back impairment, fibromyalgia, migraines, obesity, and vaginal tearing. The applications were denied (R. at 22-26). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 27). However, Plaintiff later waived her right to a hearing (R. at 36). On September 3, 2008, ALJ Carl E. Stephen issued a decision finding Plaintiff not disabled (R. at 13-20). Although a copy of a request for review does not appear to be in the record, based on the totality of the record available to the court, it appears that the Plaintiff did file a request for review of that decision. The ALJ's decision became the Commissioner's final decision on June 10, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 2-4).

Plaintiff, through counsel, timely commenced this action on August 5, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 9, 2009. (Docket No. 8). Plaintiff filed a supporting Brief on January 25, 2010. (Docket No. 9). The Commissioner filed a Brief in opposition on January 29, 2010. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III.Discussion

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 7).
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the

ALJ applied correct legal principles, application of the substantial evidence standard to

uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that

amounts to "more than a mere scintilla," and it has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed

susceptible to more than one rational interpretation, the Commissioner's conclusion

must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must

be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

---

[3]

The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: the ALJ first found that Plaintiff met the insured status requirements of the Act through December 31, 2010 (R. at 15). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since December 3, 2005. Id. At step two, the ALJ found Plaintiff's "[b]ilateral knee impairment, bursitis and fibromyalgia" to be severe impairments. Id. However, at step three, the ALJ found that Plaintiff's impairments did not either meet or medically equal a Listed impairment (R. at 16). Next, the ALJ found that Plaintiff

> ha[d] the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[4] Due to bilateral knee discomfort and diffuse muscle aches, it [wa]s reasonable to conclude that the claimant should not perform prolonged standing and walking or significant lifting; however, the objective evidence support[ed] an ability to sit for six hours, stand for two hours, and lift 10 pounds.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Id.  Plaintiff's subjective complaints were found to be "not entirely credible" (R. at 19). The ALJ found that Plaintiff was a younger individual, with at least a high school education, and was capable of communicating in English. Id. Based on Medical-Vocational Rule 201.28[5], the ALJ found that there were a significant number of positions in the national economy that Plaintiff could perform (R. at 20). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision Id.

### 2.  Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to re-contact Dr. Stewart Kaufman; and b) the ALJ erred at various other points throughout the sequential evaluation. The Court will discuss each argument in turn:

### a)  The ALJ Erred in Failing to Re-Contact Dr. Kaufman

Plaintiff argues that the ALJ erred in failing to re-contact Dr. Kaufman, Plaintiff's treating orthopedist, in an attempt to clarify his opinions. Plaintiff's Brief, pp. 3-4.

In May 2008, Dr. Kaufman completed a Workers' Compensation form indicating that Plaintiff had a total disability (R. at 182-83). Dr. Kaufman did not offer any further specific opinions of Plaintiff's ability to function despite her impairments. The ALJ acknowledged that Dr. Kaufman had a treating relationship with Plaintiff, but ultimately discounted Dr. Kaufman's finding of disability because "the record reveal[ed] limited objective clinical findings to support a conclusion of total disability" (R. at 18). Plaintiff argues that an apparent lack of objective medical evidence is not a sufficient basis to

---

[5] Medical-Vocational Rule 201.28 directs a finding of not disabled for a younger individual aged 18-44, who was a high school graduate, with non-transferable skills from skilled or semiskilled past work, and capable of performing sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.28.

dismiss a treating physician's opinion without first re-contacting that physician to clarify the basis for his opinion. Plaintiff's Brief, pp. 3-4. The Court agrees that the ALJ erred in failing to re-contact Dr. Kaufman to request a more specific opinion.

At the outset the Court notes that Dr. Kaufman's finding of total disability is a decision reserved to the Commissioner and not entitled to "any special significance." 20 C.F.R. § 404.1527(e)(1), (3). Similarly, a disability finding in the Workers' Compensation arena is not binding on the ALJ. See 20 C.F.R. § 404.1504 ("A] decision by any . . . agency about whether [the claimant is] disabled . . . is based on its rules and is not [the Commissioner's] decision about whether [the claimant is] disabled . . . . Therefore, a determination made by another agency that [the claimant is] disabled . . .  is not binding on [the Commissioner].") Nevertheless, ALJs are instructed to "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." Social Security Ruling 96-5p, 1996 WL 374183 at *2 (S.S.A.). Despite finding that objective medical evidence failed to support Dr. Kaufman's opinion of disability, the ALJ made no attempt to clarify the basis for his opinion.

However, the more notable error here was the ALJ's failure to request a medical source statement from Dr. Kaufman regarding Plaintiff's ability to function despite her impairments. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (the ALJ's duty to develop the record exists regardless of whether Plaintiff has counsel or is continuing *pro se*); see also Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (where none of plaintiff's treating physicians had offered an opinion of plaintiff's functional abilities, "the ALJ had an affirmative duty, even if plaintiff was represented by

counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity").

Dr. Kaufman's finding of total disability is vague, and therefore unhelpful, in determining Plaintiff's ability to function despite her impairments. No source treating Plaintiff's knee and back impairments provided such an assessment.[6] Indeed, the only assessments were supplied by Social Security Administration ("SSA") consultative sources. Therefore, given that Dr. Kaufman was an orthopedic specialist treating Plaintiff's knee and back impairments, and no other treating source offered an opinion of Plaintiff's functioning, the ALJ erred in failing to re-contact Dr. Kaufman to request an opinion of Plaintiff's ability to function despite his impairments. See 20 C.F.R. § 404.1513(b)(6) (a "medical report" should include "[a] statement about what [the claimant] can still do despite [her] impairment(s)"); Lawton v. Astrue, 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (internal citations removed) ("The ALJ's failure to re-contact [plaintiff's treating physician] in an attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand.").

Based on the foregoing, the Court recommends remand to allow the ALJ to request an opinion from Dr. Kaufman regarding Plaintiff's ability to function despite her impairments, as well as to clarify the bases for his opinion that Plaintiff was disabled.

### b) On Remand, the ALJ Must Properly Evaluate All Plaintiff's Impairments, Including Her Obesity

---

[6] An unsigned medical source statement from Albany Family Practice was submitted and found no physical limitations (R. at 108-12). Albany Family Practice treated Plaintiff largely for complications after she gave birth, including surgery for vaginal tearing (R. at 113-15, 210-21). Also, the only diagnoses included in the medical source statement dealt with those birth complications (R. at 109). Thus, it does not appear that any limitations from Plaintiff's back and knee impairments were considered when completing the functional assessment.

Plaintiff argues that the ALJ erred in failing to properly evaluate her obesity. Plaintiff's Brief, p. 4.

In support of Plaintiff's argument that she was disabled due to obesity, she cites to several treatment notes where Dr. Kaufman found a body mass index ("BMII")[7] of 32.9 and 33.3[8] (R. at 226, 230, 235, 243). Plaintiff is correct that these BMI scores indicate a diagnosis of obesity.[9] See Social Security Ruling 02-1P, 2000 WL 628049, at *2 (S.S.A.) (An individual with a BMI over 30 is considered obese.) [hereinafter SSR 02-1p]. Plaintiff also cites to a disability form where she stated that her obesity made her "uncomfortable" and "ma[d]e matters worse" (R. at 36). The ALJ failed to engage in a discussion of whether Plaintiff's obesity was a severe impairment, or even mention Plaintiff's obesity in his decision. Thus, the ALJ had before him evidence of a medically determinable impairment, but erroneously failed to discuss her obesity.[10] See 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence.").

Defendant argues that "an ALJ is not obligated to single out a claimant's obesity for discussion in all cases. . . . '[A]n ALJ' failure to explicitly address a claimant's obesity

---

[7] An individual's BMI "is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$)." SSR 02-1P, 2000 WL 628049, at *2.

[8] At those visits, from Jun 2007 through May 2008, Plaintiff's height was recorded as 5' 5" and her weight ranged from 198 to 200 pounds (R. at 226, 230, 235, 243).

[9] Although the treatment notes do not specifically diagnosis Plaintiff with obesity, her consistently high BMI is sufficient to allow the ALJ to infer that she was in fact obese. See SSR 02-1p, 2000 WL 628049, at *3 ("When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, . . . in most . . . cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.").

[10] The Court notes that Plaintiff has failed to point to any evidence of record, other than her statement that obesity made her "uncomfortable" and made "matters worse," to support her claim that she was functionally limited by her obesity. Indeed, the evidence to which Plaintiff cites establishes only that Plaintiff was most likely obese, not that this impairment limited her physical functioning. Thus, had this been the ALJ's sole error, the Court would have been hesitant to remand on this basis alone. See See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

9

does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.'" Defendant's Brief, p. 19 (<u>quoting</u> <u>Martin v. Astrue</u>, 2008 WL 4186339, at *3 (Sept. 9, 2008 (internal citations and quotations omitted)). However, reliance on *Martin* would be inappropriate in this case because no treating or examining source offered an opinion of Plaintiff's physical functioning.[11] The only sources to provide opinions of Plaintiff's ability to function despite her impairments were submitted by Dr. C. Wakeley, an SSA non-examining review physician, and an SSA non-examining disability analyst (R. at 136-45). Neither source indicated in their reports that they had considered Plaintiff's obesity in their decision.

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable . . . impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.A. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work, but cannot, considering . . . age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C.A. § 423(d)(2)(A).  Thus, the presence of a severe impairment or multiple impairments is insufficient to establish disability absent evidence that Plaintiff has functional limitations that would preclude him or her from engaging in any

---

[11] As discussed above, Dr. Kaufman found that Plaintiff was disabled, but offered no further opinions as to Plaintiff's physical functioning. The ALJ rejected Dr. Kaufman's opinion that Plaintiff was disabled (R. at 18).

substantial gainful activity.  See Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995); Rivera v. Harris, 623 F.2d 212, 215-216 (2d Cir. 1980).

On October 25, 1999, the SSA deleted Listing 9.09, Obesity, from 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999). The SSA explained, "Although many individuals with obesity are appropriately found 'disabled' within the meaning of the Social Security Act (the Act), we have determined the criteria in listing 9.09 were not appropriate indicators of listing level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity."  Id.   Instead of treating obesity as a listed impairment, the SSA provides guidance to adjudicators when evaluating claims where obesity is a factor in the prefaces of Listings sections 1.00Q (Musculoskeletal System), 3.00I (Respiratory System), and 4.00F (Cardiovascular System).  See 20 C.F.R. Pt. 404, Subpt. P, App. 1., Listings 1.00Q, 3.00I, 4.00F; SSR 02-1p, 2000 WL 628049.  The SSA reminds adjudicators that obesity is a medically determinable impairment, and that the combined effects of obesity with any other impairment can be greater than the effect of any single impairment considered separately.  See SSR 02-1p, 2000 WL 628049, at *1.  Further, adjudicators are instructed to consider the effects of obesity not only under the listings, but at all steps of the sequential evaluation process, including when assessing if a claimant retains the residual functional capacity to participate in substantial gainful activity.  Id.

The Commissioner's regulations do not prescribe a specific level of weight or body mass index (BMI) that equates to a severe impairment, or to a non-severe

impairment.  See SSR 02-1p, 2000 WL 628049, at *4.  Instead, an ALJ must assess the limiting effects of obesity on a claimant's functioning to determine if his or her obesity rises to the level of a severe impairment, Id., and its relationship to any other of Plaintiff's impairments.

Therefore, on remand, the ALJ must consider all of Plaintiff's impairments, including her obesity, when evaluating her alleged disability.

### c)  The ALJ Must Necessarily Reevaluate Dr. Wakeley's Opinions

Plaintiff argues that the opinion from Dr. Wakeley, a non-examining SSA review physician, "was not entitled to any consideration," because she was unable to review the entire record and her findings were not signed. Plaintiff's Brief, p. 3.

Dr. Wakeley, an SSA non-examining consultative physician, reviewed Plaintiff's record on January 10, 2007 (R. at 136). Dr. Wakeley opined that Plaintiff could "sit 6 of 8 hours, stand/walk 2 of 8 hours, [and] lift 10 pounds maximum." Id. The ALJ "acknowledge[d] that Dr. Wakeley did not examine the claimant" but ultimately afforded her opinions "some consideration" because they were "supported by the overall objective medical evidence contained in the claimant's record" (R. at 81). After the ALJ develops a complete record, he must necessarily reevaluate Dr. Wakeley's opinions in light of the new evidence. However, the Court notes the following:

Dr. Wakeley submitted her opinions on January 10, 2007 (R. at 136-37). The record contains treatment notes through May 2008 (R. at 146). Thus, Dr. Wakeley was unable to review over a year of Plaintiff's medical history. Included in that year of medical history was a diagnosis of fibromyalgia, an impairment the ALJ found to be

severe (R. at 155). The only other opinion evidence of Plaintiff's physical functioning was submitted by a non-examining disability analyst on January 11, 2007, the day after Dr. Wakely's opinions were rendered[12] (R. at 140-45). Given "[t]he general rule . . . that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability," and that these two sources were unable to review over a year of Plaintiff's medical records, the ALJ had little probative opinion evidence on which to rely when forming his decision. Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) (internal citations and quotations removed). Therefore, if the record remains deficient despite re-contacting Dr. Kaufman, the Court recommends that the ALJ obtain an up-to-date SSA consultative report.

Plaintiff argues that Dr. Wakeley's opinions were not entitled to any weight because she failed to sign her report. Plaintiff's Brief, p. 3. The Court disagrees. Dr. Wakeley received an "electronic request for medical advice" and typed the form she completed (R. at 136-37). Notably, nothing in the form was handwritten. Above a signature line at the end of the form, Dr. Wakeley typed her name, "Wakeley MD, C.," as well as the date, "1/10/07" (R. at 137).

The Regulations make it clear that "[a]ll consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. . . . A rubber stamp signature of a medical source . . . is not acceptable." 20 C.F.R. § 404.1519n. Thus, had Dr. Wakeley been an examining source, her typed signature may have been insufficient and necessitated re-contact for clarification. 20 C.F.R. § 404.1519o ("[The ALJ] will not use an unsigned or improperly signed

---

[12] As previously noted, an unsigned medical source statement from Albany Family Practice was submitted (R. at 108-12). However, that opinion only evaluated the limitations resulting from complications after giving birth.

consultative examination report to make [a denial] . . . decision[] . . . . When [the ALJ] need[s] a properly signed consultative examination report to make [a denial] . . . decision[], [the ALJ] must obtain such a report."). However, the Court could not locate, nor does Plaintiff cite, a similar requirement for a non-examining consultative source, like Dr. Wakeley. Therefore, the Court cannot fault the ALJ for failing to dismiss Dr. Wakeley's opinions based on her typed signature.

## IV. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand to allow the ALJ an opportunity to fully develop the record by re-contacting Dr. Kaufman.

## V. Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

14

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: May 26, 2011

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: May 26, 2011